CHASE, *Ex'r, Ap't, v.* CHASE.

Declarations made by a party in the ordinary course of business, explanatory of and accompanying some act done, may be given by him in evidence.

Evidence that a party consented to be taxed for his poll is competent upon the question of domicile.

When the intention of a person regarding his domicile is tried as an independent question, his declarations are competent.

In a probate appeal, if the plaintiff of record is the real party in interest, although nominally appearing in a representative capacity, the defendant may be admitted to testify.

The question whether a person has a domicile at a given place is one of fact, to be determined under proper instructions.

A request for instructions is properly denied, when, if given in the form requested, the jury would fail to understand clearly the law necessary for the application of the facts.

APPEAL, by the plaintiff, from a decree of the probate court. The defendant is the widow of Daniel Chase, and administratrix of his estate in Massachusetts. The plaintiff was a brother of the deceased, and is executor of the will of Sarah Chellis, who was the mother of Daniel and of the plaintiff. It was conceded that for many years prior to May 23, 1885, the domicile of Daniel was in Boston, Massachusetts; that on that day he went with his wife to Cornish in this county, where he remained until his death, November 3 of the same year. The plaintiff contended that at the time of his decease his domicile was in Cornish, and the defendant that it was in Boston, and this was the only question in controversy. The issue submitted to the jury was, "Was Daniel Chase at the time of his death last an inhabitant of Cornish in this county?" which the jury answered in the negative.

The defendant read the deposition of one Emmons, who deposed that when Chase went to New Hampshire he understood he went there to visit; that he so understood because Chase so told him; and that he said he should be back shortly, but did not say exactly when.

The defendant also read the deposition of Ella M. Atwood, who deposed that Chase paid a poll tax in Boston; that she saw his poll-tax bills, including that of 1885, and that she thought he paid no tax on real estate in Boston.

Other witnesses called by the defendant testified in substance that they understood from Chase, before and about the time he went to Cornish, that he went to recover his health, and should return when able; that he expected his health to improve in the country, and to be able to return in the fall and engage in some light business.

The defendant also called a witness, who testified that the plaintiff's testate told her, soon after Daniel's death, that he and his wife were at Cornish on a visit. All the foregoing evidence was received subject to the plaintiff's exception.

The defendant testified, subject to exception, general and special, in substance, that she and her husband went to Cornish for a visit and for no other purpose, fully intending to return to Boston in the fall, and that she had settled her husband's estate in Suffolk county. A certificate of the register of probate for Suffolk county of her appointment as administratrix, and of the final settlement of her husband's estate, was received in evidence. The plaintiff objected that it was not duly exemplified. The signature of the certifying officer was known to the presiding judge to be genuine.

The following, among other requests for instructions presented by the plaintiff, were refused except so far as they were embodied in those given, and the plaintiff excepted:

" 2. When a party has two residences at different seasons of the year, that will be esteemed his domicile which he himself elects, or describes, or deems to be his home."

" 5. An intention of permanent residence may often be ingrafted upon an inhabitancy originally undertaken for a special or fugitive purpose.

" 6. *Prima facie*, the place where a person lives is to be taken as his domicile until other facts establish the contrary.

" 7. Every person of full age having a right to change his domicile, it follows that if he removes to another place with an intention to make it his permanent residence, it becomes instantaneously his domicile.

" 8. If a person has actually removed to another place, with an intention of remaining there for an indefinite time and as a place of fixed present domicile, it is deemed to be his place of domicile notwithstanding he may entertain a floating intention to return at some future period.

" 9. The place where a married man's family resides is generally to be deemed his domicile."

" 13. It is not necessary that Daniel Chase should have lived in Cornish long enough to have voted, or to have been taxed there, in order that he should have been 'last an inhabitant of Cornish at the time of his death.' Whenever the fact of being at a place and the intention to remain there as his home concur, from that instant he became an inhabitant."

The charge to the jury, after some preliminary observations, was substantially as follows: " The question of domicile is a mixed one of law and fact. The domicile of a person is that place in which his habitation is fixed, without any present intention of removing therefrom. To constitute or acquire it, two things must concur—residence, and the intention of making it the home; and when once acquired it remains, although the party goes to another

place for a temporary purpose, intending to return. In other words, a domicile is not lost until a new one is acquired.

"It is conceded that Daniel Chase acquired and for many years had his domicile or home in Boston, and that about six months before his decease he came to Cornish in this state, where he remained until he died. Being at liberty to change his domicile according to his inclination and pleasure, the material question is, Did he abandon and lose his domicile in Boston and acquire another in Cornish? To have this effect, his residence in Cornish must have been with the intention of making that town his fixed place of abode or home; for if he did not have this intention, his stay in Cornish would be temporary merely, and would not affect or change the Boston domicile which he had previously acquired. It therefore becomes necessary to determine what his intention actually was; and this must be ascertained by you from his acts and declarations which have appeared in evidence, and the probabilities and circumstances of the case which have been presented and argued to you by counsel. It is your exclusive province to balance the evidence, weigh the probabilities, determine the credibility of witnesses, and draw inferences and conclusions from the facts which you find to be proved. Consequently, in arriving at a conclusion in this case you must rely upon yourselves, applying to the evidence the legal rules to which your attention has been called.

"The first inquiry would seem to be, Did Daniel Chase, in May, 1885, go to Cornish for a temporary purpose and with the intent to return to Boston, or did he not? If you find that his purpose in going was not temporary, and that he did not intend to return, but did intend to make Cornish his home, then his Boston domicile became lost, he acquired a new one in Cornish, and at the time of his death was an inhabitant of that town within the meaning of the statute upon which the issue in this case is framed. But if, on the other hand, you find he went to Cornish for the purpose of visiting his relatives and friends and benefiting his health, and intended to return to Boston in the fall, his purpose and absence would be temporary merely, and his Boston home remained his legal domicile until his decease, unless after going to Cornish he changed his intention and decided to make that place his home. If he did so decide, from that time he would be an inhabitant of Cornish; for whenever a person is in any given place and intends to remain there as his home, it makes him an inhabitant of that place until he acquires a new domicile in some other locality.

"To sum up the matter in a few words: If you find it to be more probable than otherwise that Daniel Chase intended to abandon Boston and make Cornish his home, you will answer the question submitted to you, Yes; if you do not so find, your answer will be, No."

*G. A. Davis* (of Vermont) and *E. D. Baker*, for the plaintiff.

*I. Colby* and *H. W. Parker*, for the defendant.

SMITH, J.   1. A party may give in evidence his declarations in his own favor, if they accompany some act and are part of the *res gestæ.* The declarations of Chase, testified to by Emmons, appear to come within this rule.   His intention in going to Cornish was material on the question of domicile.   What he said therefore at the time as to his purpose, whether it was to remain permanently or to return to Boston after a time, was admissible. His declarations appear to have been made in the ordinary course of business, and are explanatory of his intention in going to Cornish.   *Sessions* v. *Little,* 9 N. H. 271; *Tenney* v. *Evans,* 14 N. H. 343; *Plumer* v. *French,* 22 N. H. 450; *Kilburn* v. *Bennett,* 3 Met. 199; *Wilson* v. *Terry,* 9 Allen 214.

2. Whether or not Chase paid a tax on real estate in Boston is immaterial, real estate being taxable in the place where it is situate.   Ella M. Atwood's testimony, that she saw a Boston poll-tax bill at his Boston place of residence, may have had some tendency to show that he was assessed for, and paid, a poll tax in Boston.   The fact that he consented to be taxed there for his poll in 1885 was evidence on the question of his intention in regard to continuing Boston as his permanent domicile.   The objection that the tax bill should have been produced as being the best evidence, does not appear to have been taken at the trial.

3. The testimony of Glover, Byrne, Palmer, Johnson, and Raynesford, as to declarations of Chase explanatory of his going to, returning from, or staying at Cornish, was competent. His intention being an independent question tried, his declarations were competent, whether *res gestæ* or not.

4. The declarations of the plaintiff's testate, testified to by Minerva P. Cobb, were competent as admissions of a party.

5. A question is made whether the statute (Laws 1889, *c.* 74) excludes the defendant from testifying, the plaintiff not having elected to testify.   The controversy is, whether there shall be administration in New Hampshire on the estate of Daniel Chase. There is no controversy in regard to the Chellis estate.   The interest the plaintiff's mother had in the Chase estate was that of heir to one fourth part of it, if it shall be determined that the estate ought to be distributed through administration in New Hampshire; but if administered in Massachusetts, the widow takes the whole.   The plaintiff is also heir to one fourth part, dependent upon the same contingency.   If he had petitioned in his personal capacity and not as executor of his mother's will, no question of the right of the defendant to testify could have arisen.   Nominally, this suit is prosecuted for the recovery of his mother's one fourth part of his brother's estate.   In fact, the suit is for the

recovery of one half of that estate for his own benefit. His mother's whole estate was given to him by her will. If any sum, therefore, shall be distributed as her share, it will be distributed to him. In the most favorable aspect for the plaintiff, this controversy is one in which each party has an equal interest. In applying the statute, regard is had to the actual situation of the parties, whether nominal or real,—whether the party who appears in the record as an executor or administrator is really prosecuting or defending in his representative capacity, or is in fact the real party in interest. *Drew* v. *McDaniel*, 60 N. H. 480; *Marcy* v. *Amazeen*, 61 N. H. 131; *Berry* v. *McArdle*, 62 N. H. 354; *Welch* v. *Adams*, 63 N. H. 344, 351; *Emery* v. *Clough*, 63 N. H. 552, 556. As the plaintiff is prosecuting this appeal in fact for his personal benefit, the defendant was properly admitted to testify.

The certificate of the register of probate of Suffolk county was properly received. *Welch* v. *Adams, qua supra.* But if it were necessary, the authentication could be completed after verdict. *Roulo* v. *Valcour*, 58 N. H. 347.

6. The question whether a person has a domicile or home at a given place is one of fact, to be determined under proper instructions. It involves an inquiry as to the acts of the party, and the intention with which such acts are done. His declarations as to his intention are not conclusive. They may be so inconsistent with any reasonable interpretation to be put upon his acts that the inevitable conclusion may be that they were not made in good faith. The second request for instructions was not for these reasons true, as matter of law. Besides, it does not appear that Chase had a summer residence at Cornish. But if it did, it is conceded that his domicile was in Boston until May, 1885, and the question tried was, not whether he had a choice between two residences, but whether he had abandoned his Boston residence. The request, therefore, if correct as matter of law, was not called for by the facts.

The other instructions requested were included in substance in those given. It is no cause for exception that they were not given in the language requested. Besides, there is ground for apprehension that if they had been given in the naked form in which they were presented, and without comment or explanation, the jury might not have got that clear understanding of the law of the case which was necessary for the proper application of the facts.

*Exceptions overruled.*

BLODGETT, J., did not sit: the others concurred.